UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON GRAHAM BICKHAM, MARGARET ANN BOGGS, JEANETTE EVYONNE BREWER, ARTWETTA LENISE CRUMBY-CANNON, MARCIA LYNN CCCULLOUGH, KIMBERLY RENAE SCHUMACHER, REGINA YOLANDA THOMAS, MICHAEL LEE RICHARDS, CALVIN AUSTIN, EUGENE DAVID BENOIT, JR., SHEILA ANN HAYES-WARD, JAMES WALTER HIERS, LORI KAY LAMB, GREGORY ORLAN REED, LINDA HAMBRICK THOMPSON, IRMA CONTRERAS TOTIN, EVERLINE WARRENS, GLENDA TURNER BROWDER, TRAVIS ANTHONY BURLEY, WILLIAM THEODORE THEUS,, <br><br> Plaintiffs, <br><br> vs. <br><br> ELI LILLY AND COMPANY, an Indiana corporation, <br><br> Defendant. | CASE NO. 1:15-CV-531 WTL-MJD |

### DEFENDANT ELI LILLY AND COMPANY'S REPLY IN SUPPORT OF DEFENDANT'S MOTION TO SEVER AND TRANSFER PLAINTIFFS' CLAIMS

Plaintiffs' Opposition acknowledges their broader purpose in filing multi-plaintiff complaints on behalf of otherwise unrelated out-of-state residents. By their admission, Plaintiffs have long sought to create an informally "centralized proceeding" of a reported 2,000-plus long-promised, but as-yet unfiled, Cymbalta discontinuation suits. Pls.' Opp. at 3-4. In doing so, they ask this Court to sanction a "quasi-MDL," *see* Pls.' Opp. at 5, thereby side-stepping the judgment of the Judicial Panel on Multidistrict Litigation ("JPML") that

"centralization . . . would not serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation," and preempting the JPML's reconsideration of whether to centralize Cymbalta proceedings triggered by plaintiffs' second request for centralization. *See In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d 1393, 1394 (J.P.M.L. 2014); *In re: Cymbalta Prods. Liab. Litig.*, MDL No. 2662 (Dkt. 1) (J.P.M.L. 2015). Despite detailing their longstanding effort to centralize these cases, Pls.' Opp. 3-7, Plaintiffs assert that "consolidation . . . is not at issue here." Pls.' Opp. at 6. But the fact remains that the JPML is the proper venue for decisions regarding centralization, and Plaintiffs cite no legal authority for the proposition that Rule 20 may be used as a tool for a litigant dissatisfied with the decision of the judicial body statutorily charged with determining the propriety of centralization under 28 U.S.C. § 1407.

In addition, Plaintiffs do not meaningfully challenge the great weight of authority concluding that product liability claims are "generally inappropriate for multi-plaintiff joinder because such cases involve highly individualized facts." *See In re Accutane Prods. Liab. Litig.*, 2012 WL 4513339, at *1-2 (M.D. Fla. Sept. 20, 2012). That authority applies directly to the disparate claims of Plaintiffs here, counseling in favor of severance under Rule 21. Nor have Plaintiffs successfully rebutted Lilly's showing that these claims should proceed in those venues with the closest relationship to the central factual allegations concerning Plaintiffs' Cymbalta use and complained-of symptoms. Indeed, experience suggests that Plaintiffs' claims will hinge on facts related to each prescribing physicians' knowledge and prescribing decision. *See, e.g., Hexum v. Eli Lilly and Co.*, Case No. 2:13-cv-02701 (Dkt. 354) (C.D. Cal. Aug. 18, 2015) (granting a directed verdict where plaintiff could not establish proximate cause because her prescribing physician did not testify to reading or relying upon the Cymbalta label). Consistent

with the decisions of six other federal courts preserving venue in the home districts of those plaintiffs, Lilly respectfully submits that, upon severance, the Court should also transfer Plaintiffs' claims to their districts of residence pursuant to 28 U.S.C. § 1404.

## ARGUMENT

I. **Plaintiffs May Not Create a "Quasi-MDL."**

It is undisputed that Plaintiffs seek to impose on this Court a "quasi-MDL" where the JPML declined to do so. *See* Pls.' Opp. at 3-7; *Hill v. Eli Lilly and Co.*, 1:15-cv-00141 (Dkt. 27) at 1, 4-8 (S.D. Ind. Jul. 7, 2015) (filed by Plaintiffs' Counsel). Indeed, Plaintiffs' Counsel, who filed the first petition for MDL, has filed six Cymbalta lawsuits containing unrelated out-of-state plaintiffs in the Southern District of Indiana. Using the *Hill* opposition as a template, Plaintiffs now argue that their opposition to severance is rooted in the efficient adjudication of claims. But Plaintiffs can neither gloss over their admitted endeavor to create "in this district . . . a centralized proceeding," *see* Pls.' Opp. at 4, nor escape the fact that this end-run approach finds no support in the Federal Rules.

The JPML is the federal judicial body charged with evaluating the propriety of centralization. *See* 28 U.S.C. § 1407 (empowering the JPML to consolidate proceedings "upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions"). Applying that statutory standard, the JPML declined to create an MDL in this litigation. *See In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d at 1394. Plaintiffs should not now be permitted to avoid the JPML's ruling and preempt their own pending second petition for centralization by filing in this Court multi-plaintiff cases on behalf of scores of unrelated and factually and legally distinct plaintiffs. *See, e.g.*, *Krupp v. Eli Lilly & Co.*, 2015 U.S. Dist. LEXIS 83762, at *12 (M.D. Fla. Apr. 6, 2015) (rejecting plaintiffs' efforts to use transfer and consolidation "as a

3

pseudo-appellate vehicle for unhappy MDL petitioners"); *Laica-Bhoge v. Eli Lilly & Co.*, 2015 WL 3919515, at *8 (M.D. Fla. June 25, 2015) (noting that the JPML had already rejected plaintiffs' arguments in support of their proposed transfer and consolidation tactic). If allowed, this approach would burden the Court with a constellation of dissimilar cases otherwise unsuitable for joinder under Rule 20.

Rather than point to legal authority supporting their approach here, Plaintiffs claim that the straightforward application of the Federal Rules that Lilly proposes would "ensure that Plaintiffs' day in court remains economically out of reach." *See* Pls.' Opp. at 1. The history of this litigation to date, however, suggests that Plaintiffs' claims, when exposed to merits review, cannot withstand scrutiny. *See, e.g., Hagan-Brown v. Eli Lilly and Co.*, No. 1:14-cv-1416 (Dkt. 257) (E.D. Va. Sept. 1, 2015) (jury verdict for Lilly after six-day trial); *Herrera v. Eli Lilly and Co.*, No. 2:13-cv-02702 (Dkt. 364) (C.D. Cal. Aug. 19, 2015) (jury verdict for Lilly after four-day trial); *Hexum*, No. 2:13-cv-02701 (Dkt. 354) (granting a directed verdict after two days of trial); *McDowell v. Eli Lilly & Co.*, 58 F. Supp. 3d 391, 406 (S.D.N.Y. 2014) (granting summary judgment because Lilly's warnings for Cymbalta were adequate as a matter of law), *reconsideration denied*, 2015 WL 845720 (S.D.N.Y. Feb. 26, 2015), *reconsideration denied*, No. 13-3786 (Dkt. 71) (S.D.N.Y. July 13, 2015); *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930, at *11 (C.D. Cal. Dec. 18, 2014) (denying class certification); *Carnes v. Eli Lilly & Co.*, 2013 WL 6622915, at *7 (D.S.C. Dec. 16, 2013) (granting summary judgment "because Plaintiffs cannot establish that Defendant's failure to adequately warn of the risk of withdrawal symptoms associated with Cymbalta proximately caused [plaintiff's] injuries").[1] Lilly's request that the

---

[1] *See also Mayes v. Eli Lilly & Co.*, No. 14-1759 (Dkt. 46) (N.D. Ohio June 30, 2015) (dismissed with prejudice for failure to prosecute); *Kelly v. Eli Lilly & Co.*, No. 14-3869 (Dkt. 35) (N.D. Cal. Apr. 30, (continued…)

4

Court sever Plaintiffs' improperly joined claims and transfer Plaintiffs to their home districts so that their claims may be expeditiously resolved on an individual basis on their merits is neither sinister nor unfair. And each of the six other federal courts that have confronted these issues to date has agreed with Lilly. *See* Lilly's Br. at 5-6 & n.2, 20, 24.

II.     **Plaintiffs Avoid the Distinct Questions of Fact and Law Rendering Joinder Inappropriate.**

Plaintiffs' Opposition brief largely ignores the core factors dictating severance of their claims. In particular, Plaintiffs offer little substantive response to Lilly's showing that their lawsuits present numerous distinct questions of fact and law arising out of distinct occurrences.

First, Plaintiffs do not — and cannot — meaningfully dispute that federal courts have overwhelmingly held that pharmaceutical products liability cases are generally not amenable to multi-plaintiff joinder because such cases necessarily involve highly individualized facts. *See* Lilly's Br. at 8-12 (citing numerous cases, including cases from other district courts in the Seventh Circuit, finding joinder of pharmaceutical product liability claims inappropriate due to case-specific facts). In response to this voluminous authority, Plaintiffs can do little better than cite just a handful of outlier cases, each of which was decided in a different context — in all except one a motion to remand removed claims back to state court for lack of diversity jurisdiction. *See* Pls.' Opp. at 9-10, 12-13. Curiously, in arguing in favor of the joinder of Plaintiffs, who presumably took Cymbalta in thirteen different states, Plaintiffs' Counsel also cites for the first time *In re Norplant Prods. Liab. Lit.*, 168 F.R.D. 579 (E.D. Tex. 1996), a case in which the court ruled that plaintiffs must have been implanted with the Norplant medical device *in the same state* in order to be properly joined under Rule 20. As noted in Lilly's

---

2015) (voluntarily dismissed, with fees awarded to Lilly); *Carter v. Eli Lilly & Co.*, No. 13-2700 (Dkt. 87) (C.D. Cal. Sept. 12, 2014) (voluntarily dismissed with prejudice).

5

opening brief, the great weight of the authority supports Lilly's position that joinder is not appropriate in cases of this kind, which necessarily involve distinct time periods, distinct medical histories, distinct uses of the medicine, distinct alleged injuries, and physician-specific knowledge and conduct with respect to the warnings and prescriptions at issue. *See, e.g.*, *In re Prempro Prods. Liab. Litig.*, 417 F. Supp. 2d 1058, 1060 (E.D. Ark. 2006) (concluding that Rule 20 joinder was not proper where plaintiffs were prescribed medicines "from different doctors, for different lengths of time, in different amounts, and suffered different injuries"); *McGrew v. Howmedica Osteonics Corp.*, 2015 WL 159367, at *2-3 (S.D. Ill. Jan. 13, 2015) ("In the medical products liability context, medical and legal causation present formidable obstacles under Rule 20. . . . With these principles in mind, the Court concludes that Plaintiffs' claims do not arise from the same transaction or series of transactions as they must in order to satisfy Rule 20's permissive joinder requirements.") (citation and quotation marks omitted); *Alvarez v. Armour Pharm.*, 1997 WL 566373, at *1 (N.D. Ill. Sept. 8, 1997) ("The proximate cause issues for each plaintiff would . . . predominate over common issues.").

Second, contrary to Plaintiffs' assertion, their duty to warn claims hinge on their physicians' unique decisions to prescribe Cymbalta. Because the duty to warn runs to the prescribing physician and not the patient, the central question of this case is whether each Plaintiff's prescriber would have altered his or her prescribing decision if provided with Plaintiffs' preferred warning. *See Tucker v. SmithKline Beecham Corp.*, 701 F. Supp. 2d 1040, 1066 (S.D. In. 2010) (applying Indiana law). Judge Wilson granted Lilly's directed verdict motion on precisely this issue following two days of trial in the second Cymbalta case tried. *See Hexum*, Case No. 2:13-cv-02701 (Dkt. 354). Where Plaintiffs allege that Lilly failed to warn

their prescribing physicians of the risk of Cymbalta, the prescribers' knowledge and individualized prescribing decisions rest at the heart of each Plaintiff's claim.

Third, Plaintiffs cannot credibly disagree with the self-evident proposition that resolution of their claims would require the Court to apply the laws of at least thirteen states. *See* Lilly's Br. at 14, 23-4; Pls.' Opp. at 23 (Plaintiffs' concession that "[t]here is an interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action" (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981))). Plaintiffs attempt to brush this point aside by stating, without offering any support, that the laws of the various jurisdictions are uniform. *See* Pls.' Opp. at 25. But this is simply not true. For instance, Texas (where Plaintiffs Brewer, Schumacher, Thompson, and Totin reside) has a unique statute that imposes special requirements for products liability claims against manufacturers of FDA-approved medicines. *See* Tex. Civ. Prac. & Rem. Code § 82.007. Similarly, Louisiana (where Plaintiff Warrens resides) imposes a "but for" proximate cause standard that differs from the substantial factor test recognized in several other states. *See Daye v. General Motors Corp.*, 720 So. 2d 654, 659 (La. 1998). Moreover, this multi-state problem will only grow if Plaintiffs deliver on their promise to file thousands of additional cases, *see* Pls.' Opp. at 3, which would task this Court with becoming an expert in the products liability laws of most or all states.[2] The legal distinctions wrought by these multi-state claims make joinder inappropriate, and they strongly counsel in favor of transferring Plaintiffs' cases to courts that have more familiarity with the laws of Plaintiffs' home jurisdictions. *See, e.g.*, *Allstate Prop. & Cas. Ins. Co. v. Omega Flex,*

---

[2] Plaintiffs have also filed additional multi-plaintiff suits in federal court in California, and as an alternative to severance or dismissal have asked that those cases be transferred to this Court, which would only further increase and complicate the constellation of state laws this Court would have to entertain. *See, e.g.*, Pls.' Opp. to Def.'s Mot. to Dismiss, *Ben v. Eli Lilly & Co.*, No. 14-2914 (Dkt. 19, at 13-14) (E.D. Cal. July 11, 2015).

*Inc.*, 2013 WL 786764, at *2 (S.D. Ind. Mar. 1, 2013) (severing claims where adjudication of suits would require application of laws of three different states); *Am. Commercial Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 947 (S.D. Ind. 2008) (noting that interest of justice "is best served when court efficiency is served, specifically when a court most familiar with the law to be applied is able to oversee the case").[3]

### III. Plaintiffs Offer No Basis for Maintaining These Cases Before This Court.

Plaintiffs' position against transfer amounts to two unavailing arguments: (1) Plaintiffs filed their lawsuits here, and (2) Lilly maintains its corporate headquarters in Indianapolis. *See* Pls.' Opp. at 17-26.

As Lilly noted in its initial brief, a plaintiff's choice of forum is entitled to less deference when a plaintiff files suit outside of her home state in a forum that has little connection to the critical events in the case. *See Leeway Media Grp., LLC v. Joachim*, 2014 WL 345291, at *6, *7 (S.D. Ind. Jan. 30, 2014) (Magnus-Stinson, J.) (finding that plaintiffs' "choice of forum, Indiana, should be given less deference because Indiana is not their home state" and transferring case to Central District of California). Plaintiffs cite one factually distinct Seventh Circuit case for the non-controversial proposition that the plaintiff's choice of forum should generally not be disturbed "unless the balance is strongly in favor of the defendant." *See* Pls.' Opp. at 16-17 (citing *In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664-65 (7th Cir. 2003)). But the balance *does* strongly favor Lilly's position here, where all of the witnesses and facts critical to Plaintiffs' lawsuits reside in (or arise out of) Plaintiffs' home jurisdictions. *See, e.g.*, *McCraw v.*

---

[3] Plaintiffs' argument that concerns pertaining to juror confusion or prejudice can be cured through separate trials essentially concedes the need for severance. *See* Pls.' Opp. at 13-14. If it is apparent even at this early stage that Plaintiffs' claims are too legally and factually distinct to be tried together without confusing the jury, then they are likewise too distinct to be litigated in tandem throughout discovery and other pre-trial proceedings.

*GlaxoSmithKline*, 2014 WL 211343, at *5 (E.D. Pa. Jan. 17, 2014) ("Though the development of Paxil is alleged to have occurred within the Eastern District of Pennsylvania, the 'operative facts' (e.g., where ingestion and injury occurred) are those which are alleged to have occurred within the Southern District of Texas."); *Boksenbaum v. Abbott Labs.*, 2012 WL 6061360, at *1 (E.D.N.Y. Dec. 6, 2012) (rejecting plaintiff's choice of forum in favor of plaintiff's venue of residence, where "most of the critical events" occurred, including plaintiffs' prescription and medical treatment); *Hutson v. A.H. Robins Co.*, 846 F. Supp. 14, 16 (S.D.N.Y. 1994) (rejecting plaintiff's choice of forum in favor of plaintiff's venue of residence at time of medical treatment, where discovery would be "centered").

Plaintiffs also focus on the mere fact that Lilly maintains its corporate headquarters in this district, a point they support with little more than a recitation of the number of acres and buildings on Lilly's corporate campus. *See* Pls.' Opp. at 18-24. This ignores Lilly's showing that the facts that will ultimately resolve these product liability lawsuits — including whether a hypothetical different warning would have altered the prescribing decisions of Plaintiffs' out-of-state healthcare providers and the causal relationship (if any) between Plaintiffs' discontinuation of Cymbalta and their alleged injuries — are necessarily case-specific and arise out of jurisdictions other than the Southern District of Indiana. *See, e.g.*, *Hexum v. Eli Lilly and Co.*, Case No. 2:13-cv-02701 (Dkt. 354); *In re Consol. Parlodel Litig.*, 22 F. Supp. 2d 320, 321-22, 326, 328 (D.N.J. 1998) (transferring cases out of defendant pharmaceutical manufacturer's home venue to plaintiffs' home districts because plaintiffs' claims arose where medicine was ingested, not where it was developed or manufactured); *see also* Lilly's Br. at 17-20 (citing cases). As the JPML noted, company-side discovery in this litigation — including depositions of Lilly corporate witnesses — is essentially complete; what remains to be litigated in each lawsuit are

the unique case-specific facts that make joinder of these claims inappropriate and counsel in favor of transfer. *See In re Cymbalta (Duloxetine) Prods. Liab. Litig.*, 65 F. Supp. 3d at 1394 (noting that "the record shows that most, if not all, of the common discovery has already taken place").[4] Indeed, the parties' discovery efforts going forward will necessarily focus on the witnesses — Plaintiffs and their prescribers — who reside in (or adjacent to) Louisiana, Texas, New York, Tennessee, and Alabama, and not on the company witnesses who have already been deposed. Given this, it makes little sense for Plaintiffs' cases to be litigated in this Indiana-based Court. *See, e.g.*, *Hutson*, 846 F. Supp. at 16 (maintaining venue in plaintiff's home district at time of treatment, where "discovery will be centered").

As Lilly explained in its initial brief, six other federal courts addressed the parties' venue arguments when they decided plaintiffs' 11 motions to transfer other cases to this Court. *See* Lilly's Br. at 5-6 & n.2, 20, 24. These other courts uniformly rejected Plaintiffs' arguments and sided with Lilly, with several of them specifically noting the impropriety of plaintiffs' efforts to circumvent the MDL consolidation process. *See id.* Plaintiffs' Opposition offers no principled basis for reaching a conclusion contrary to what these courts have already concluded — namely, that Plaintiffs' efforts to consolidate factually and legally distinct cases in a *de facto* MDL in this Court should be rejected. The Court should transfer these cases to the jurisdictions in which they rightfully belong.

---

[4] Since the JPML's December 2014 Order, Lilly has produced additional company-side documents and plaintiffs have deposed additional corporate witnesses, completing in substantial part any remaining common discovery.

## CONCLUSION

For all these reasons, and for the additional reasons stated in Lilly's initial brief, the Court should sever Plaintiffs' claims and transfer Plaintiffs' suits to their respective home districts.

DATED this 14th day of September, 2015.

Respectfully submitted,

ICE MILLER LLP


*s/ Nancy Menard Riddle*
Mary Nold Larimore, Atty. No. 9877-49
Email: Larimore@icemiller.com
Phone: 317-236-2407
Fax: (317) 592-4688
Nancy Menard Riddle, Atty. No. 15075-49
Email: Nancy.Riddle@icemiller.com
Phone: (317) 236-2189
Fax: (317) 592-4740

ICE MILLER LLP
One American Square, Suite 2900
Indianapolis, IN 46282-0200

Phyllis A. Jones
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001-4956
Phone: (202) 662-5868
Fax: (202) 778-5868
pajones@cov.com

*Attorneys for Defendant*
*Eli Lilly and Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 14th day of September, 2015, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

      Diane Marger Moore
      dmargermoore@baumhedlundlaw.com

      Robert Brent Wisner
      rbwisner@baumhedlundlaw.com


      *s/Nancy Menard Riddle*
      Nancy Menard Riddle

I\6160457.1